12   145
31   446

## EX PARTE FRANK RANDON.

1. RIGHT OF BAIL.— The Bill of Rights guaranties the right of bail except in "capital cases when the proof is evident." If *habeas corpus* for allowance of bail be sued out, and it appears upon the hearing that the applicant is in legal custody to answer an indictment for a capital offense, this suffices to show *prima facie* that the offense is non-bailable, and leaves it incumbent on the applicant to establish his right to bail by showing that the proof against him is not evident. This necessitates him to take the initiative and introduce evidence by which the court can determine the issue, but does not exact that the evidence shall affirmatively exculpate him, and the issue is to be determined upon the entire evidence adduced for

and against him, and without regard to the *prima facie* case made by the indictment.  He is entitled to bail unless the evidence as an entirety satisfies the court that the proof of his guilt is evident. *Ex Parte Scoggin*, 6 Texas Ct. App. 546, does not contravene these rules.

2. SAME — CASE STATED.— Appellant sued out *habeas corpus* for allowance of bail.  At the hearing it appeared that he was in jail under a *capias* emanating from an indictment which charged him with murder in the first degree.  He procured process for all the witnesses named on the indictment, and he examined such of them as appeared.  The evidence tended to show that the deceased had been killed, but neither identified him as the man for whose murder the appellant was indicted nor connected the appellant with the homicide.  *Held,* that the appellant should have been admitted to bail.

HABEAS CORPUS on appeal from a judgment in chambers rendered by the Hon. W. H. BURKHART, Judge of the 18th Judicial District.

On February 24, 1882, the appellant applied to Judge Burkhart for the writ of *habeas corpus*, alleging in his petition that he was restrained of his liberty by the sheriff of Fort Bend county by virtue of a *capias* based upon an indictment charging him with the murder of Theophilus Smith.  Appellant prayed for process for all the witnesses whose names appeared on the indictment, and for an investigation of the charge against him to the end of ascertaining if he was entitled to give bail.  He exhibited a copy of the indictment, which was presented on November 3, 1881, and charged appellant with the murder of Theophilus Smith by shooting him with a gun and cutting him with a knife about October 27, 1881.

The sheriff's return to the writ of *habeas corpus* admitted the material allegations of the petition, and the correctness of the exhibited copy of the indictment.  Appellant procured subpœnas for the four witnesses whose names were indorsed on the indictment, but the officer failed to find one of them, and another one was disabled from attending.  At the hearing of the application before

the district judge, the two who appeared were introduced and examined by the appellant.

W. C. Sims, who was a justice of the peace and one of the witnesses whose names appeared on the indictment, testified that he knew Smith, the alleged deceased, who was called Offie Smith. Early in November, 1881, in the Pittsville neighborhood, Fort Bend county, witness saw portions of a human corpse. Henry Nails conducted witness to the body for the purpose of holding an inquest upon it, and the inquest was held on it as the body of Offie Smith. The witness proceeded to give a description of the appearance and condition of the remains upon which he held the inquest. The head and legs were separated from the trunk, and scattered over an area of eight or ten feet. There was no flesh on the head or the trunk, but the feet seemed to have been protected by the pants having been pulled down over them, and there was flesh on them about as far up as the socks reached. Witness thought that the lower jaw was missing. He could see that the remains were those of a man, but could not identify him. The body had on three shirts, and there were rents and holes in them which some remarks of the witness implied were probably made by bullets or buckshot. Witness knew that Offie Smith was missing, but could not say that it was his body on which the inquest was held. And the witness disclaimed knowledge of any fact tending to connect appellant with the killing of Offie Smith, if the latter had been killed. He had seen Smith about two weeks before he held the inquest. As justice of the peace he issued a warrant for Randon, the appellant, but the latter was not produced on the warrant, and was in jail when next seen by the witness. Many who were present at the inquest said they recognized the body as that of Offie Smith. On cross-examination the witness stated that, about two weeks before the body was found, he issued a warrant

for Offie Smith, who was arrested by Ben George, a constable, and a brother of Randon, the appellant.  The charge against Smith was the theft of a bale of cotton, and appellant was not prosecuted in connection with Smith for the theft.  The last time witness saw Smith was when the latter was before him on the arrest made by Ben George.

William James, whose name was one of the four indorsed on the indictment, was introduced by the applicant, and testified that Offie Smith had no permanent home but worked about at one place or another.  Witness had not seen Smith for a month before the latter was killed, if he was killed, and could not say whether Smith was dead or alive.

J. W. Parker, testifying for the applicant, stated that after the warrant for Offie Smith was issued the applicant Randon came to him, the witness, who is a lawyer, to get him to defend him, Randon, in case he should be arrested about the cotton, in connection with Offie Smith.  Witness advised him to go home and wait till he was indicted.  Witness knew of nothing which pointed to Randon as a party concerned in the killing of Smith.  On cross-examination the witness could not say whether Smith had been killed at the time he, the witness, was consulted by Randon.  The latter did not ask witness's advice about Smith in connection with the cotton matter.  Legal proceedings for the bale of cotton have been instituted by the applicant Randon.

Deputy sheriff Andrus and jailor Hayes testified that the applicant, while in jail, apprised them by signs of preparations by the prisoners to break out of jail, and enabled the witnesses to frustrate the escape of the prisoners.

The State summoned a number of witnesses, but examined none.

The trial judge overruled the application for allowance

of bail, and assigned his reasons in writing. After citing and commenting on *Ex Parte Scoggin*, 6 Texas Ct. App. 546, he considered it incumbent on the applicant to introduce "some evidence bearing upon the transaction, connecting the applicant with it in such a manner as fails to make it evident that he is guilty of a capital offense, or some evidence of his want of connection with it as would produce the same result. The introduction of evidence in no wise connecting or disconnecting the applicant with the offense charged,— the mere showing that the remains of a human body, not identified, were found,— without showing what the applicant had to do or did not have to do in the commission of the homicide, does not answer the requirements of the law. The expression 'if he declines to introduce any evidence' clearly means evidence bearing upon the commission of the offense, connecting the defendant with it in such a manner (or showing his want of connection with it) as to justify the court in the conclusion that, if the defendant did commit the offense, he did so under circumstances rendering the case bailable, or that it is not evident, from the situation of the defendant or otherwise, that he committed the offense at all. Evidence less than this is in effect no evidence at all, and according to the above decision (the case of Scoggin) 'if the applicant refuses to introduce any evidence bail should not be allowed him.' The applicant holds the affirmative of the issue; he affirms that he is entitled to bail,— that the proof is not evident;— and in undertaking to prove this he must comply with what is understood by *evidence* and *proof*. 'Evidence includes all the means by which an alleged matter of fact, the truth of which is submitted to investigation, is established or disproved. Proof is the effect or result of this evidence.' The indictment alleges as a matter of fact that the defendant is guilty of a capital offense, and the evidence must establish or disprove the truth of this allegation. To hold the contrary would

defeat the efficacy of the opinion in *Ex Parte Scoggin;* because, if this reasoning be not correct, all an applicant would have to do would be to put in evidence something or anything, however remote or disconnected with the case, and thus demand of the State the introduction of the testimony relied upon for conviction. He would not in such case exhibit the proof so as to enlighten or inform the court as to his guilt or innocence."

From the judgment refusing him the allowance of bail, the applicant prosecutes the present appeal.

*J. Wesson Parker,* for the appellant. Article 413, Code Crim. Proc., provides that "the attorney representing the State shall prepare all indictments . . . and indorse thereon the names of the witnesses on whose testimony the same was found." Then, we ask, if a person under indictment must array the testimony against himself and take the burden of proof, where else could he in law, reason or common sense be expected to go to ascertain the proof against him? The appellant had this legal notice upon the indictment that W. C. Sims, Wm. James, Nancy Hall and Eli Watts were the witnesses who knew of his connection with the murder of Smith. Appellant had process issued for these very witnesses who were to condemn him. Two of these witnesses were before the court and testified, viz.: Sims and James. The return of the State's officers shows that Eli Watts could not be found. The witness Wm. James testifies that Nancy Hall was sick in child-bed with twins. And thus we show the diligence used by applicant to elicit the evidence (if, indeed, there exists any) against himself.

Now if two out of four witnesses who, the appellant is informed, can throw light upon this mystery, in fact know nothing *evident* against him, and another cannot be found and the fourth cannot attend by reason of natural, but unavoidable, causes in so far as appellant is

concerned, is this not a sufficient compliance with the demand of the State that he must show that he is entitled to bail?

Again, we object that appellant must show that he is entitled to bail as held by the district judge in this case and in Scoggin's case. This proposition is a new feature in the criminal jurisprudence of Texas; it reverses the well-known rule of evidence, that in all criminal accusations the burden of proof is upon the State. It bids defiance to those humane provisions of our law that throws the mantle of innocence around a citizen until his guilt is established by legal evidence. It informs the person charged that, though the law cannot compel you to give evidence against yourself, yet you must find witnesses that can inculpate you. You must confront yourself with the witnesses against you; you can have compulsory process to obtain witnesses against you. And then when the issue is joined before the court the proof of your *innocence* must be evident.

If a person indicted must show to the court the impossibility of his connection with the offense charged, as in this case the appellant is required to do, how can this be done, except by summoning the balance of mankind to appear before the court and testify themselves out of it? and consequently, if no one else killed the deceased and in fact he was killed by some one, then it would have to fall upon appellant. How could appellant be expected to prove an alibi? The indictment charges the offense to have been committed *about* the 27th day of October, 1881. Under this allegation the State can introduce proof of killing at any time, however remote, prior to the finding of the bill. How could he interpose any defense known to the law, if in fact he is innocent of the charge against him, and which the law presumes him to be until his guilt is made evident by legal evidence; and thus it will be seen that an innocent person, under the operation of

this rule, is placed at a greater disadvantage than one who can establish his own guilt at least to a moderate degree. This rule is not in harmony with art. 134, Code Crim. Proc., which provides that "every provision relating to the writ of *habeas corpus* shall be most favorably construed, in order to give effect to the remedy and protect the rights of the person seeking relief under it."

A trial under the *habeas corpus* act is but an examining trial, and our Code Crim. Procedure, art. 265, provides that the rules of evidence are the same on examining trials as upon final trials.

Article 309, Code Crim. Proc., provides: "In capital cases where the proof of the guilt of the accused is *evident*, bail cannot be allowed. *In all other cases the accused is entitled to bail as a matter of right.*"

Another reason assigned by the district judge in refusing appellant bail, was that the dead body found was not identified by the witnesses who testified. We think this was error. Suppose we admit the very strongest circumstance against appellant; such as threats, and preparation to kill Smith, and Smith disappears, and within a short time a human body is found that bears marks of violence; unquestionably the remains must be identified as Smith's before any conviction can be had.

The State in refusing to introduce any evidence (if any she has) has deprived the appellant of the inestimable right to hear an explanation of the nature and cause of the accusation against him. This is one of the grand objects to be attained under the writ of *habeas corpus;* especially when the life of a citizen is in jeopardy. Nothing could be of more importance to appellant in order that he might be prepared to vindicate his cause upon a final trial. There is no provision of our law, nor any construction that can be placed upon it, that will authorize the State in cases of such moment to withhold her testimony to the detriment of the accused. This.

would be but ambushing a citizen, to lock him up in
prison and lead him astray by placing on the back of the
indictment the names of parties that know nothing
against him; and, upon final trial, to unmask a battery
of witnesses upon him, whose evidence he had no oppor-
tunity to rebut or explain,—a trial secret in its nature
and forbidden by law.

*H. Chilton,* Assistant Attorney General, for the State.

WINKLER, J.   The appellant, Frank Randon, having
been arrested by authority of a *capias* based upon an in-
dictment charging him with the murder of one Theoph-
ilus Smith, sued out a writ of *habeas corpus* before the
Hon. Wm. H. Burkhart, judge of the 18th Judicial Dis-
trict.   On a hearing the judge refused to allow the appli-
cant bail, and remanded him to the custody of the sheriff
to await the further orders of the court.   From this
judgment an appeal has been prosecuted to this court.
The reasons which operated on the mind of the court in
refusing bail to the applicant accompany the transcript.

These reasons may be stated in substance as follows:
Where an applicant for bail is shown to be held in cus-
tody under a *capias* founded upon a valid indictment, he
is not illegally restrained of his liberty, and to entitle him
to bail it is incumbent upon him to show by proof that
the charge upon which he is restrained is a bailable one.
In other words, the applicant must show that, though
held to answer a charge of a capital offense, the proof is
not evident against him, in order to meet the request of
the Bill of Rights which is as follows: "All persons shall
be bailable by sufficient sureties unless for capital offenses
when the proof is evident."   Constitution, art. 1, sec. 11.

Let it be supposed that by the return of the sheriff to
the writ of *habeas corpus* it appears that the applicant is
held by a proper charge, as for instance a capital indict-
ment and *capias,* and when the time arrived for hearing

the writ the applicant should not offer any testimony at all. The court, being informed as to the nature and cause of his arrest and detention, could not do otherwise than to remand him to custody for the reason that *prima facie* at least he was being held for a non-bailable offense; and this is the substance of the decision of this court in Scoggin's case, 6 Texas Ct. App. 546, cited by the judge. As was said in Scoggin's case, so in this: "He undertook to show that he had a constitutional right to be admitted to bail, in that the proof of his guilt was not evident. This could only be shown by exhibiting the proofs." It was also held in Scoggin's case, and we think correctly, that "if it appear by the return and the papers attached that he is indicted for a capital offense, it is incumbent upon him to show that he is entitled to bail." It should, however, be borne in mind that the principal question determined on this branch of Scoggin's case was as to whether the State or the applicant was entitled to the opening on the evidence.

But Scoggin's case was not analogous to the one under consideration. In the present case it seems from the statement of facts that the applicant not only introduced evidence to establish his right to bail, but he did more: he had summoned and he examined all accessible witnesses whose names were indorsed upon the back of the indictment, and showed by them what their testimony would be; thus showing, so far as in his power, the whole evidence attainable for the State as well as for the applicant. There were two witnesses whose names were indorsed on the back of the indictment who were not examined on the *habeas corpus*. One of these could not be found by the officer, who went after him with a *subpœna*; the other was a female confined in child-bed. Their absence seems to have been satisfactorily accounted for, as there was no desire manifested to postpone or continue the examination on account of their absence.

In our opinion the question to be determined by the court is whether in such a case, upon the whole evidence adduced (when the evidence is gone into), is the guilt apparent? Is it evident that he is guilty of a capital offense, *i. e.* murder in the first degree, and therefore not bailable? And this question should be determined without reference to whether the evidence was introduced by the applicant or by the State, and without reference to the *prima facie* case which would in the absence of proof be made by the production of a *capias* and a valid indictment. The whole evidence must be sufficient to satisfy the court that the proof of the guilt of the accused is evident, or the applicant is entitled to bail.

In the present case we do not wish to make any comment upon the strength of the evidence, lest what we may say might be used in a manner not intended. We are constrained, however, to make this observation, that from the testimony embraced in the statement of facts sent up with the record, the proof to our mind is not evident; and we are of opinion, therefore, that the learned judge before whom the *habeas corpus* was tried erred in refusing bail to the applicant, and that the judgment and order must be reversed. The applicant will be admitted to bail by appearing before the Hon. Wm. H. Burkhart, judge as aforesaid, with his sureties to be taken and approved, and the sufficiency of the sureties to be determined by said judge, in the sum of one thousand dollars. A certified copy of this opinion will be forwarded to the Hon. Judge Burkhart for his guidance at the earliest day practicable.

*Ordered accordingly.*